UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
----------------------------------
                                 :
    HOLLY ANN BURROWS,            :
                                 :
     Plaintiff,                   :    CIVIL NO. 13-3744(NLH)
                                 :
          v.                      :
                                 :           OPINION
    COMMISSIONER OF               :
    SOCIAL SECURITY,              :
                                 :
     Defendant.                   :
                                 :
----------------------------------
```

APPEARANCES:

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S WHITE HORSE PIKE
AUDUBON, NJ 08106
*Attorney for plaintiff*

KAREN T. CALLAHAN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278-0004
*Attorney for defendant*

**HILLMAN, District Judge**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of plaintiff for Disability Insurance Benefits ("Social Security benefits") under Title II of the Social Security Act.  42 U.S.C. § 401, et seq.

The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that although the plaintiff could not return to any past relevant work, she could perform alternative work based on the framework of the vocations guidelines.   For the reasons stated below, this Court will affirm the ALJ's decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On June 13, 2010, the Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act.  The application was denied on initial consideration and reconsideration, and the Plaintiff filed a request for a hearing on January 31, 2011, which hearing was held on February 8, 2012.  The ALJ concluded that Plaintiff suffered from limitations in her ability to perform basic work related activities due to the effects of opiate dependence, anxiety, and depression, and that she was incapable of returning to her past relevant work as a waitress.  However, the ALJ found that Plaintiff could perform alternative jobs and determined that Plaintiff was not disabled and not entitled to benefits based on disability on March 8, 2012.  Plaintiff appealed the ALJ's decision to the Appeals Council on April 12, 2012 which issued an Order on April 29, 2013, denying review.  Plaintiff now seeks this Court's review.

2

## II.  DISCUSSION

A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  <u>See</u> <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  <u>See</u> <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F.

3

Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

B.   Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such

severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which exists
in the national economy, regardless of whether such work exists in
the immediate area in which he lives, or whether a specific job
vacancy exists for him, or whether he would be hired if he applied
for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

> 1.  If the claimant currently is engaged in substantial
> gainful employment, he will be found "not disabled."
>
> 2.  If the claimant does not suffer from a "severe
> impairment," he will be found "not disabled."
>
> 3.  If the severe impairment meets or equals a listed
> impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1
> and has lasted or is expected to last for a continuous
> period of at least twelve months, the claimant will be
> found "disabled."
>
> 4.  If the claimant can still perform work he has done
> in the past ("past relevant work") despite the severe
> impairment, he will be found "not disabled."
>
> 5.  Finally, the Commissioner will consider the
> claimant's ability to perform work ("residual functional
> capacity"), age, education, and past work experience to
> determine whether or not he is capable of performing
> other work which exists in the national economy.  If he
> is incapable, he will be found "disabled."  If he is
> capable, he will be found "not disabled."

6

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

C.   Analysis

In his decision dated March 8, 2012, the ALJ found at Step One that the Plaintiff had not engaged in substantial gainful work activity since August 1, 2007.  He found that she had impairments that were considered "severe" at Step Two consisting of "opiate dependence, anxiety disorder, and depressive disorder".  He specifically found that Plaintiff's "impairments cause more

than a slight limitation in the claimant's ability to perform work related functions." The ALJ also considered the Plaintiff's allegations of back pain but ultimately concluded that there were no significant objective findings in the record evidencing that the claimant had a back impairment which caused more than slight, if any, limitations of work related functions which have lasted or would be expected to last for a period of at least 12 consecutive months. On that basis, he did not include the claimant's back problems as a "severe" impairment.

At Step Three, the ALJ found that none of the "severe" impairments met or equaled the level of severity of the Listings of Impairments. At Step Four, the ALJ found that as a result of these impairments, Plaintiff had a mild restriction in her activities of daily living, a moderate difficulty in social functioning, and moderate difficulties with regards to concentration, persistence, or pace. The ALJ found that as a result of her impairments, the Plaintiff had no exertional impairment but did have nonexertional impairments. At Step Five, the ALJ determined that Plaintiff was limited to unskilled work with short, simple instructions, routine tasks, and only occasional contact with the public, supervisors, and co-workers. Based on this finding as to the Plaintiff's residual functional capacity, the ALJ found that Plaintiff was prevented from returning to her past work as a waitress.

8

The ALJ found that there were alternative jobs the Plaintiff could perform based on the framework of the vocational guidelines.  He specifically referred to SSR 85-15 for the proposition that for a person with purely nonexertional impairments, the vocational guidelines provided a framework for decision-making.  The ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act and therefore, was not entitled to benefits under Title II of the Social Security Act.

Plaintiff contends that the ALJ erred in his Step Five analysis that she could perform alternative work based on the framework of the vocational guidelines on grounds that his decision is not supported by substantial evidence and violates Sykes v. Apfel, 228 F.3d 259 (3rd Cir. 2000) and Social Security Ruling AR 01-1(3).[1]  Plaintiff argues that since her impairments

_____

1 Acquiescence Ruling (AR) 01-1(3) was issued by the SSA in response to Sykes.  As a result of that decision, the SSA issued the following ruling regarding Step 5 for cases in the Third Circuit:

> In making a disability determination or decision at step 5 of the sequential evaluation process (or the last step in the sequential evaluation process in continuing disability review claims), we cannot use the grid rules exclusively as a framework for decisionmaking when an individual has a nonexertional limitation(s).  Before denying disability benefits at step five when a claimant has a nonexertional limitation(s), we must: (1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice that we intend

were nonexertional,[2] the ALJ should have considered testimony from a vocational expert in determining that she was capable of performing an unskilled job.

   To support a determination whether jobs exists in the national economy for a particular claimant, the Third Circuit

─────────────────────

   to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the claimant the opportunity to respond before we deny the claim.

   This Ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision.

2  "Limitations may be exertional, nonexertional or a combination of both." Hall v. Commissioner of Social Sec., 218 Fed.Appx. 212, 216 n.1 (3d Cir. 2007)(citing 20 C.F.R. § 404.1569a(a)). "Exertional limitations are those that only affect a claimant's ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling)." Id. (citing 20 C.F.R. § 404.1569a(b)). "Non-exertional limitations are those that affect a claimant's ability to meet job demands other than strength demands." Id. (citing 20 C.F.R. § 404.1569a(c)). "Examples of non-exertional limitations include: difficulties functioning because of nervousness, anxiety or depression; difficulties in maintaining attention or concentration; difficulties in understanding or remembering detailed instructions; difficulties seeing or hearing; difficulties handling physical features of a work setting, such as dust or fumes; or, difficulties with manipulative or postural functions, such as reaching, handling, stooping, climbing, crawling, or crouching." Id.

requires that an ALJ support his determination by citing to rules, relying on vocational testimony, or by taking judicial notice after providing the claimant an opportunity to counter it. Sykes, 228 F.3d at 273; Hall v. Commissioner of Social Sec., 218 Fed.Appx. 212, 217 (3d Cir. 2007). In cases where the claimant exhibits nonexertional limitations, the ALJ cannot simply rely on the medical-vocational guidelines to direct a finding of not disabled at Step Five. Hall, 218 Fed.Appx. at 215. However, where the claimant's limitations are nonexertional, the medical-vocational guidelines can be used as a "framework" to guide the disability decision. Id. (citing 20 C.F.R. § 404.1569a(d)).

In addition, the ALJ can rely upon rulings issued by the Social Security Administration as long as it is "crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) (determining that just as any hypothetical scenario presented by a vocational expert must contain a complete factual basis in order to constitute substantial evidence, so must reliance upon an SSR show how the SSR is relevant and controlling). An ALJ is not required to use a vocational expert if the claimant has nonexertional impairments. Valladolid v. Commissioner Of Social Security, 29 Fed.Appx. 861, 865 (3d Cir. 2002); SSR 85-15 ("Where there is no exertional impairment, unskilled jobs at all levels of

11

exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work.  These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for person with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.").

        The parties do not disagree that plaintiff had only nonexertional limitations.  The parties also agree that the ALJ relied upon SSR 85-15 and used the medical-vocational guidelines as a framework in his decision.  However, plaintiff argues that simple reliance on SSR 85-15 without more, such as a testimony from a vocational expert, was error.

        SSR 85-15 pertains to the medical-vocational rules as a framework for evaluating solely nonexertional impairments.  SSR 85-15 states that depending upon the nature and extent of the impairment, an ALJ may need to consult a vocational resource, or for "relatively simple issues," the publications in sections 404.1566 and 416.966[3] of the regulations are sufficient vocational

_____

3 Sections 404.1566 and 416.966 pertain to work which exists in the national economy and provides information on how the ALJ determines whether it is possible for a claimant to work and notes that in making this determination, the ALJ can take notice of (1) Dictionary of Occupational Titles, published by the Department of Labor;(2) County Business Patterns, published by the Bureau of the Census; (3) Census Reports, also published by the Bureau of the Census; (4) Occupational Analyses prepared for the Social Security

resources.

Plaintiff argues that the ALJ's finding that her impairments resulted in her limitation to work involving only short, simple instructions, routine tasks, and occasional interaction with others, drastically restricted the numbers and types of jobs any individual could perform.  Plaintiff argues that any job requires at least some contact with a supervisor and that an employee that cannot be in contact with a supervisor is not capable of sustaining any job.[4]  Plaintiff argues that in her case, a vocational expert was required to assess the impact of work activity based on plaintiff's work restrictions.

Based on nature and extent of plaintiff's nonexertional limitations, this is a relatively simple case and the ALJ's reliance on the framework of the medical-vocational guidelines was allowable under SSR 85-15.  The ALJ was not required to utilize a vocational expert, and the nature and extent of plaintiff's nonexertional limitations did not require one.[5]  Although plaintiff

_____

Administration by various State employment agencies; and (5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics.

4  Counsel notes that this is speculation but makes the point that the ALJ is no better position to assess the impact on work activity of the restrictions he finds than is counsel.

5  The Court finds Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), cited by Plaintiff, to be distinguishable.  There, the ALJ did not consult a vocational expert or provide notice to the claimant that he would solely rely upon the medical-vocational

argues that the ALJ was not equipped to determine how her work limitations would impact her job, the ALJ cited extensively to plaintiff's abilities to go to a Methadone clinic daily, to receive therapy 1 to 2 hours once a week, clean her house, garden, do laundry, prepare meals, to read 2 to 3 hours per day, arrange for transportation, and maintain relationships with her husband, daughter and grandson.  The ALJ also noted that plaintiff received compensation for babysitting.  Therefore, plaintiff's hypothetical that there are no jobs in which any person would not be required to interact with a supervisor is not relevant.  There is no

---

guidelines in the Step Five analysis.  The Third Circuit reversed the district court's affirmance of the ALJ's decision, finding that sole reliance on the medical-vocational guidelines when a claimant has severe nonexertional limitations, along with exertional limitations, was improper.  The Sykes case is distinguishable because: (1) Plaintiff here does not have severe nonexertional limitations, (2) the court stated that it did not need to resolve the issue of whether "the Commissioner can properly refer to a ruling for guidance as to when nonexertional limitations may significantly compromise the range of work that an individual can perform," and (3) the SSA's statement on how Sykes should be applied concludes: "Under our interpretation of 20 CFR 404.1569a, 416.969a and section 200.00(e) of Appendix 2 to Subpart P of Part 404, and of SSR 83-14, we are not required to consult a vocational expert or other vocational resource in all instances in which we decide whether an individual who has a nonexertional limitation(s) is or is not disabled. . . . [Sykes] does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision."

evidence in the record that she would be unable to occasionally interact with others.  Also, the ALJ found that plaintiff was limited to occasional contact with others.  He did not find that she could have no contact with others.

The plaintiff relies on Allen and Poulos v. Commissioner of Social Security, 474 F.3d 88 (3d Cir. 2007) arguing that the ALJ cannot simply rely upon a SSR without a vocational expert or other authority.  However, both Allen and Poulos determined that an ALJ can rely on a SSR if it is "crystal clear" that the SSR is probative as to the way in which the nonexertional limitations impact the plaintiff's ability to work.  Both Allen and Poulos were remanded because there was insufficient findings as to how the claimant's limitations would impact his ability to work.  In Allen, there was no determination as to the effect stress had on Allen's ability to function.  Allen, 417 F.3d at 405-07.  In Poulos, the SSRs cited did not address the "nonexertional limitations found by the ALJ, such as Appellant's inability to shift rapidly between positions or locations, his limitations on the performance of perceptual-motor tasks, and his limitation in the use of certain chairs."  Poulous, 474 F.3d at 94.

In this case, plaintiff argues that reliance on SSR 85-15 was in error because it does not address plaintiff's limitations in associating with others.  However, as noted above, the evidence regarding plaintiff's panic attacks and anxiety in

public places is based on plaintiff's testimony and not supported by any objective medical evidence.  The ALJ found that plaintiff's testimony in this regard was not credible because it contradicted objective findings in her medical reports. [6]  See 20 C.F.R. § 404.1529(c); Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999)(an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony).  The ALJ found that although there was certain medically determinable impairments that could reasonably be expected to cause the alleged symptoms, that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible.  Therefore, ALJ's determination that she have only occasional interaction with the public, supervisors and co-workers is supported by substantial evidence.

Accordingly, this is not a complex case that requires

---

6  The ALJ determined that plaintiff was able to attend group and individual, travel daily to the Methadone clinic, lived independently, cared for her grandson, and made telephone calls to friends and family.  Notes from Urban Treatment Associates stated: plaintiff had "lots of abilities," was living independently, attending group and individual sessions weekly, wanting to stay "clean" and move forward with her life, and not feeling "this good" in a long time.  Dr. Goldberg, plaintiff's treating psychologist, noted on December 7, 2010, that plaintiff was babysitting to pay for her rent.  Physician Assistant Karen Levasseur at Complete Care Health Network noted no unusual anxiety or evidence of depression during her examination of plaintiff on September 11, 2009.

testimony from a vocational expert and the ALJ's reliance on the framework of the medical-vocational guidelines was allowable under SSR 85-15.

### III. CONCLUSION

For the reasons expressed above, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the decision of the ALJ is affirmed.

An accompanying Order will be issued.

Date:_____June 27, 2014_____          _____s/Noel L. Hillman_____

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

17